UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| JOSEPH MCMULLIN, | ) | |
| --- | --- | --- |
| Plaintiff | ) | |
| v. | ) | 1:17-CV-312-LEW |
| ANDREW W. PEIRSON, | ) | |
| Defendant | ) | |

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this removed action, the Plaintiff, Joseph McMullin, alleges the Defendant, Trooper Andrew W. Peirson, violated his "rights under the Fourth Amendment of the United States Constitution to be free from excessive, unreasonable, or unnecessary force" during an arrest for criminal OUI, 29-A M.R.S.A. § 2411. Pl.'s Compl. ¶ 28 (ECF No. 3-2). Defendant Peirson moves for summary judgment on the Plaintiff's excessive force claim, arguing that his actions were objectively reasonable under the circumstances. Alternatively, the Defendant argues that even if the Plaintiff's rights were violated, summary judgment is warranted on the basis of qualified immunity. Mot. Summ. J. (ECF No. 24).

Based on my review, I find that the Plaintiff has not raised genuine issue for trial to support his contention that the force used was unreasonable and I, therefore, grant Defendant's motion.

# FACTS

I take the facts in the light most favorable to the Plaintiff. The summary judgment facts are drawn from the parties' stipulations and their statements of material facts submitted in accordance with Local Rule 56. The Court will treat as undisputed a statement of fact admitted by the opposing party. If a statement is denied or qualified by the opposing party, or if an evidentiary objection is raised concerning the record evidence cited in support of a statement, the Court will review those portions of the summary judgment record cited by the parties, and will accept, for summary judgment purposes, the factual assertion that is most favorable to the party opposing the entry of summary judgment, provided that the record material cited in support of the assertion is of evidentiary quality and is capable of supporting the party's assertion, either directly or through reasonable inference. D. Me. Loc. R. 56; *Boudreau v. Lussier*, 901 F.3d 65, 69 (1st Cir. 2018). Additionally, in cases such as these where the events in question are captured on video and the parties have stipulated to the authenticity and admissibility of the video, the court must "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *see also Mitchell v. Miller*, 56 F. Supp. 3d 57, 61 (D. Me. 2014), *aff'd*, 790 F.3d 73 (1st Cir. 2015).

On February 21, 2016, Defendant Peirson, a Trooper of the Maine State Police, was on patrol in his marked police cruiser in Howland, Maine. Def.'s Statement of Material Facts ("DSMF") ¶¶ 1, 2 (ECF No. 23, #211). At approximately 8:00 pm, Trooper Peirson stopped a vehicle operated by Plaintiff McMullin due to his reasonable and articulable suspicion that Mr. McMullin was intoxicated. *Id.* ¶¶ 4-5; Joint Statement of Facts ("JSF")

¶ 1 (ECF No. 21, #208). Mr. McMullin was accompanied by two passengers in the vehicle: Ashley McMullin, Mr. McMullin's then 15-year-old daughter, and Kylie Tibbetts, the then 18-year-old girlfriend of Mr. McMullin's son. DSMF ¶ 13.

After a brief interaction during which Trooper Peirson observed that Mr. McMullin's speech was slurred, his eyes were glazed over, and he smelled of alcohol, Trooper Peirson asked Mr. McMullin to step out of his vehicle and perform a variety of field sobriety tests. *Id.* ¶¶ 12, 16. At the conclusion of these tests, both parties agree Trooper Peirson had probable cause to arrest Mr. McMullin for criminal OUI, 29-A M.R.S. § 2411. *Id.* ¶ 17; JSF ¶ 2. Reliable blood alcohol content test results later confirmed Trooper Peirson's assessment, indicating that Mr. McMullin had a 0.149 blood alcohol level. DSMF ¶¶ 96-97; JSF ¶ 3.

After completing the field tests, Trooper Peirson informed Mr. McMullin he was under arrest. DSMF ¶¶ 18, 19. Although Mr. McMullin never tried to run away from Trooper Peirson, Pl. Add'l Statement of Material Facts ("PSMF") ¶ 107 (ECF No. 30, #278), he, nevertheless, failed to comply with Trooper Peirson's eight separate requests to turn around and put his hands behind his back. DSMF ¶¶ 18, 26, 29, 34, 36, 38, 44, 48. Instead, Mr. McMullin consistently backed away from Trooper Peirson, repeating concerns about his passengers' safety and leaving his vehicle on the road. DSMF ¶¶ 20, 27, 37, 45, 49. Trooper Peirson repeatedly advised Mr. McMullin that the kids would be safe and that he would ensure that somebody came to collect them. *Id.* ¶¶ 29, 34, 38, 40. After repeated refusals, Trooper Peirson implored, "Don't make your kids watch this, OK?" *Id.* ¶ 46.

In the process of backing away from Trooper Peirson, Mr. McMullin alternated between backing towards his car—at one point, contacting or nearly contacting the driver's side of the vehicle with his back—and backing across the road, away from his vehicle. *Id.* ¶¶ 31, 44, 48. On two separate occasions, Mr. McMullin entered the southbound, oncoming lane of traffic. *Id.* ¶¶ 31, 48. Eventually, Trooper Peirson concluded, reasonably, that force was necessary to effect Mr. McMullin's arrest due to Mr. McMullin's repeated refusals to comply with his commands. *Id.* ¶ 53.

While facing Mr. McMullin, Trooper Peirson grabbed one of Mr. McMullin's wrists and attempted to turn him around to handcuff him. DSMF ¶ 54; PSMF ¶ 103. As he did so, Mr. McMullin tensed his body, resisting Trooper Peirson's effort. DSMF ¶ 55. Trooper Peirson then struck Mr. McMullin in the face. DSMF ¶ 57; PSMF ¶ 108.

In his subsequent statements, Mr. McMullin asserts he was knocked unconscious "when the Trooper first hit him." PSMF ¶ 123; Dep. of Joseph McMullin ("McMullin Dep") 18-20, 38-41 (ECF No. 20-7, #156, 161). However, as discussed below, the record establishes that any unconsciousness was, at most, momentary. To the extent Mr. McMullin would suggest he experienced any extended unconsciousness the suggestion is contradicted by the video record and Mr. McMullin's own testimony and admissions. Indeed, the objective audio[1] evidence is consistent with Trooper Peirson's assertion that Mr. McMullin was not knocked unconscious and even continued to converse and actively

---

[1] When Trooper Peirson took hold of Plaintiff and struck him, Plaintiff had backed into the opposite lane, outside of the camera's view.

4

resist arrest throughout the encounter. Def.'s Response to PSMF ¶ 123; DSMF ¶¶ 57, 66, 67, 71, 72, 75, 77, 79, 84, 86, 87.

Whether momentarily unconscious or not, the parties agree that Trooper Peirson grabbed Mr. McMullin as he was falling and directed him to the ground on his back, in the opposite traffic lane. PSMF ¶¶ 111, 113; DSMF ¶¶ 60, 62. Trooper Peirson landed on top of him. DSMF ¶ 61.

Once on the ground, Trooper Peirson straddled Mr. McMullin's body. PSMF ¶ 115; DSMF ¶ 63. As he attempted to handcuff Mr. McMullin, Trooper Peirson shouted, "Turn around! Put your hands behind your back!" DSMF ¶ 63. At this point, the video shows Mr. McMullin's arm moving upwards towards Trooper Peirson. Cruiser Video, 17:26 – 17:35 (Doc. 20-1, #64). While the parties contest the purpose of this movement,[2] the parties nevertheless agree that Mr. McMullin exclaimed "Officer!" and moved his hands in front of his face. DSMF ¶ 65; PSMF ¶ 116.

Trooper Peirson then struck Mr. McMullin a second time, possibly with a closed fist, and rolled Mr. McMullin onto his stomach, shouting "Give me your hands, now!" PSMF ¶¶ 117-118; DSMF ¶¶ 69-70. Mr. McMullin responded, "Officer, relax!" DSMF ¶ 71.

With Mr. McMullin on his stomach, Trooper Peirson struggled to gain control of Mr. McMullin's wrists as they were under his chest and Trooper Peirson could not reach

---

[2] Trooper Peirson claims Mr. McMullin "swung his arm at Trooper Peirson." DSMF ¶ 64. In contrast, Mr. McMullin asserts he "never tried to swing at the Trooper." PSMF ¶ 106. Regardless of whether or not the movement is properly characterized as a "swing," the video makes it clear Mr. McMullin did move his arm towards Trooper Peirson.

5

them. *Id.* ¶ 72. At this point, Trooper Peirson asserts Mr. McMullin "kept moving his hands and then put his wrists up under his chest so [he] could not reach them." *Id.* ¶ 72.[3]

Trooper Peirson then grabbed the back of Mr. McMullin's head and pushed it down into the pavement and delivered a third blow to the back of Mr. McMullin's head. DSMF ¶ 73; PSMF ¶¶ 120-21, 126.[4] Once again, during his deposition, Mr. McMullin admitted to speaking following this third blow. Cruiser Video, 17:48, (Doc. 20-1); McMullin Dep. 42:13-16 (ECF No. 20-7, #162). After this strike, Trooper Peirson attached handcuffs to one of Mr. McMullin's wrists. DSMF ¶ 74.

Trooper Peirson maintains that Mr. McMullin "continued to resist" after one wrist was handcuffed and continued to keep the other wrist away from Trooper Peirson. *Id.* ¶¶ 75, 77. Mr. McMullin denies offering resistance while he was on the ground, but it is apparent from the video that he was conscious throughout the struggle and did not comply with orders to give up his hands. Pl.'s Response to DSMF ¶ 75; Dep. of Kylie Tibbetts ("Tibbetts Dep.") 17-18 (ECF No. 20-8, #184-85). Regardless, the parties agree that

---

[3] The Plaintiff attempts to deny this assertion by citing to a portion of Kylie Tibbetts's deposition testimony in which she stated "[McMullin] didn't move at all" after the officer struck him. Dep. of Kylie Tibbetts ("Tibbetts Dep.") 18:2 (ECF No. 20-8, #185). However, the Plaintiff takes this statement out of context. Although it is unclear to which blow the witness is referring when she initially made this statement, she later clarified during the same deposition that it was after the third blow that McMullin "stopped resisting" and not after this second blow. *Id.* 53:7-15 (ECF No. 20-8, 193).

[4] It is at this point that one of the witnesses, Kylie Tibbetts, testifies—in contrast to Mr. McMullin's own testimony that he was knocked unconscious after the first blow—that Mr. McMullin was knocked unconscious. Tibbetts Dep. 53:12-15 (ECF No. 20-8, #193). She stated she "honestly believe[d] [Trooper Peirson] hit [Mr. McMullin] hard enough to knock him out" and later clarified that Mr. McMullin "was knocked out at that point." Tibbetts Dep. 17:23-25, 18:3-7 (ECF No. 20-8, #184, 85); 53:7-15 (ECF No. 20-8, 193) (clarifying that this statement refers to the third blow).

Trooper Peirson then commanded Mr. McMullin to "turn around, give me the other hand." DSMF ¶ 76.

When Mr. McMullin did not comply, Trooper Peirson ordered Mr. McMullin to give him his other hand two additional times—the final command coming eight seconds after the previous. *Id.* ¶¶ 78, 80. Trooper Peirson eventually pulled Mr. McMullin's wrist out from under his body, scraping his hand in the process. *Id.* ¶ 81, 82.

Measured from the moment Trooper Peirson first grabbed Mr. McMullin's wrist to the time Trooper Peirson completed handcuffing Mr. McMullin, the confrontation lasted approximately 44 seconds. *Id.* ¶ 83. The record and parties are unclear as to whether Trooper Peirson delivered a fourth strike prior to successfully handcuffing Mr. McMullin. DSMF ¶ 85; PSMF ¶ 127. Both parties confirm Mr. McMullin spoke to Trooper Peirson "throughout their struggle." DSMF ¶ 87.

After the confrontation, Trooper Peirson noticed Mr. McMullin had cuts on the bridge of his nose and asked Mr. McMullin if he needed an ambulance, to which Mr. McMullin responded in the affirmative. *Id.* ¶¶ 92-93. Trooper Peirson waited with Mr. McMullin until he was placed in the ambulance. *Id.* ¶ 94.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue

of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, Plaintiff McMullin must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case.").

Trooper Peirson argues that the amount of force he employed to secure Mr. McMullin was reasonable under the circumstances and that, alternatively, it is not beyond debate whether the force in question exceeded a "clearly established" limit such that he would be deprived of qualified immunity. Def.'s Mot. Summ. J. at 2, 12-20. When navigating a claim for summary judgment involving qualified immunity, it is "wise for courts to cabin these standards and keep them logically distinct, first identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." *Morelli v. Webster*, 552 F.3d 12, 19 (1st Cir. 2009). As the first step of a qualified immunity inquiry asks, in essence, whether excessive force has been established under the Fourth Amendment, I will consider first the Plaintiff's excessive force claim and then turn to the application of qualified immunity. *Id.* at 23.

## I. Excessive Force Under 42 U.S.C. § 1983 and The Fourth Amendment

Trooper Peirson is entitled to summary judgment on Mr. McMullin's excessive force claim because the amount of force Trooper Peirson used to effectuate Mr. McMullin's arrest was reasonable under the circumstances, and, therefore, was not objectionable under the Fourth Amendment.

The Fourth Amendment guarantees the government will not violate an individual's right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. As established in *Graham v. Connor*, this protection extends to citizens in the context of an arrest. 490 U.S. 386, 388 (1989). However, this constitutional shield does not wholly forbid the use of force in an arrest; instead, it is well-established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Thus, I must evaluate the Plaintiff's claim of excessive force through the lens of the Fourth Amendment's "objective reasonableness" standard which requires plaintiffs to "show not only that [the law enforcement officer] employed force . . . but also that that level of force was objectively unreasonable under the circumstances." *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 326 (1st Cir. 2015).

The determination of whether the force used by the law enforcement officer was objectively unreasonable requires courts to engage in "a fact-intensive inquiry that is highly sensitive to the circumstances of the particular case." *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 148 (1st Cir. 2003). I must look to the totality of the circumstances and consider a variety of factors which may include: "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Although this inquiry is fact-intensive, if the facts viewed most favorably to the plaintiff do not permit a finding that the officer's use of force was excessive under the circumstances, a court should grant the officer's summary judgment motion. *See, e.g., Manchester v. Cumberland Cty. Sheriff's Dep't*, 2017 WL 1954761, at *4 (D. Me. May 10, 2017) (concluding after a review of the facts that because "[n]one of th[e] evidence directly or indirectly contradict[ed] [the police officer's] affidavit that he did not use any physical force," summary judgment must be granted.).

A. Reasonableness Under *Graham*

   1. *Severity of the crime*

The record establishes that Trooper Peirson had probable cause to arrest Mr. McMullin for criminal OUI, 29-A M.R.S. § 2411; DSMF ¶ 17; JSF ¶ 2. Criminal OUI is a "serious offense," albeit one that does not always present the same degree of risk that may be present in the context of an "officer confront[ing] a suspect engaged in an offense like robbery or assault." *Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008). Here, Plaintiff was very much inebriated, and he behaved in an irresponsible and defiant manner. Thus, even though Mr. McMullin's drunken behavior, standing alone, would not call for an overwhelming application of force, it necessitated a physical intervention and significantly complicated Trooper Peirson's efforts to take Mr. McMullin into custody. Moreover, Mr. McMullin's failure to submit to arrest generated both a threat to public safety and a

10

resistance scenario that justified a somewhat greater application of force than merely laying hands on his person.

### 2. *Threat to safety*

Mr. McMullin did not pose an immediate physical threat to the safety of Trooper Peirson or others during his sobriety test. However, after being informed that he would be arrested, Mr. McMullin refused to submit to arrest and led Trooper Peirson in an unsafe do-si-do in the middle of the roadway. This behavior presented a hazard to his safety and the safety of Trooper Peirson, and it required Trooper Peirson to adopt a somewhat more commanding method of subduing Mr. McMullin. Moreover, because this encounter took place in the roadway, it was reasonable for Trooper Peirson to attempt to bring the matter to a close expeditiously.[5]

### 3. *Actively resisting arrest*

In this case, the record—including the video recording, the deposition transcripts, and even Mr. McMullin's own testimony and admissions—establishes that Mr. McMullin continued to resist arrest throughout the encounter. It is clear Mr. McMullin was neither subdued nor nonresistant until after he was handcuffed—approximately two minutes after he had been informed he was under arrest and following three or four blows from Trooper Peirson.[6]

---

[5] *See, e.g., Parker*, 547 F.3d at 9 (commenting that "the offense of resisting arrest could certainly pose a risk to an arresting officer.").

[6] The Plaintiff made a point of disputing the reasonableness of the force used by Trooper Peirson on the basis that it was administered with a closed fist. This assertion is flatly denied by Trooper Peirson, who maintained the blows were administered with an open hand. Whether the force was administered with an open hand or closed fist is not determinative in my view because an open hand strike could involve as

Regardless of his motives, Mr. McMullin admits to having refused to submit to arrest by consistently backing away from Trooper Peirson for over a minute—resulting in Trooper Peirson's reasonable belief that force was necessary to effectuate the arrest. *See, e.g., Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding that the force used by arresting police officers was not excessive because the plaintiff "refused to comply" with the police officer's repeated command to "turn around and give up his right arm" and instead who backed away from the officers and then responded with "escalating verbal and physical resistance"). Once Trooper Peirson grabbed Mr. McMullin's wrist in an attempt to restrain him, Mr. McMullin continued to refuse to comply with Trooper Peirson's demands that he submit to arrest, ultimately requiring Trooper Peirson to pull Mr. McMullin's wrist out from under his body after 44 seconds of struggle.

In his claim, Mr. McMullin glosses over his initial refusal to submit to arrest by characterizing his actions as "casually back[ing] away from the Trooper for a little over one minute." Pl.'s Resp. to Def.'s Mot. Summ. J. 6-7 (ECF No. 29, #257-58). However, this description is in direct conflict with the video recording which shows an intoxicated Mr. McMullin erratically backing away from Trooper Peirson all the while refusing to

---

much force as a closed fist, depending on the manner of delivery. The Plaintiff has failed to supply—and I am also unaware of—any precedent in which a closed fist was considered presumptively unreasonable. Instead, courts must evaluate the use of force within the context of the situation and have found even greater levels of force reasonable under the Fourth Amendment's "objective reasonableness" standard. *See, e.g.*, *Statchen v. Palmer*, 623 F.3d 15, 17 (1st Cir. 2010) (finding that a police officer "kneeing and hitting" an arrestee was reasonable under the circumstances).

submit to Trooper Peirson's consistent and calm demands that he turn around and put his hands behind his back.[7]

a. Continued resistance

Once the situation escalated and Trooper Peirson grabbed Mr. McMullin's wrist, Mr. McMullin's claims of nonresistance hinge on his assertion that he was knocked unconscious after the first blow from Trooper Peirson. The Plaintiff's argument presumably follows that if he was unconscious, he could not have actively resisted arrest.[8] However, this argument is, at best, inconsistent with the record. While I must consider the facts in the light most favorable to the Plaintiff, the Plaintiff cannot survive summary judgment on facts that are unsupported by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

---

[7] Plaintiff cannot create a factual dispute when his claimed actions are directly contradicted by the video recording to which the parties have stipulated. In such cases, courts must "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. at 380-81. Unlike cases in which the video recording revealed that the Plaintiff's actions were passive and therefore force was unreasonable, *see*, *e.g.*, *Blackstone v. Quirino*, 309 F. Supp. 2d 117, 128 (D. Me. 2004), the present record contains audio and visual evidence of Mr. McMullin's continued resistance to arrest.

[8] As a general rule, force applied after an arrestee is subdued and nonresistant is objectively unreasonable. *See*, *e.g.*, *Jennings v. Jones*, 499 F.3d 2, 6 (1st Cir. 2007) (indicating that a jury could reasonably conclude the force administered by a police officer was unreasonable under the Fourth Amendment when testimony indicated that the police officer "continued to twist [the arrestee's] ankle after [the arrestee] had stopped resisting and was under control," eventually breaking the ankle); *Hodsdon v. Town of Greenville*, 52 F.Supp.2d 117, 122 (D. Me. 1999) (indicating that, if accepted, the Plaintiff's version of events—which included the arresting officer slamming the Plaintiff's head on the police car and grabbing the Plaintiff by the hair and slamming his face onto a gravel road after the Plaintiff was handcuffed—could reasonably lead a jury to find a violation of the Fourth Amendment).

13

Despite his claims of unconsciousness caused by Officer Peirson's first blow, Mr. McMullin admits to having moved his hands in front of his face and exclaiming "Officer!" prior to the second blow. [9] Similarly, Mr. McMullin admits to speaking prior to the third blow and soon after the fourth blow. Mr. McMullin further undercuts his claim of unconsciousness by acknowledging he "[spoke] to Trooper Peirson throughout their struggle." DSMF ¶ 87. This testimony is confirmed by the audio from the video recording which captured Mr. McMullin's voice at many points throughout the confrontation.[10]

Considering these facts, and in order to accept that Mr. McMullin was unconscious when he was struck the second, third, or possibly fourth time, "a jury would have to conclude that McMullin was able to carry on a lucid conversation with Trooper Peirson, while unconscious." Def.'s Reply Mem. in Supp. of Mot. Summ. J., 4 (ECF No. 34, #314). Even if I assume, all objective evidence to the contrary, that there is a factual dispute regarding whether Mr. McMullin was rendered unconscious by the first blow, his unconsciousness could only have been momentary and occurred during a period during which no blows were administered. This is confirmed by the ineluctable conclusion that he was lucid enough to speak and move his arms prior to the second blow from Trooper Peirson.

---

[9] When faced with incredulity from counsel regarding his alleged unconscious state and evidence of having spoken at various times throughout the physical altercation, Mr. McMullin retreated from his absolute insistence he was knocked unconscious and conceded he may have been "semi" unconscious. McMullin Dep. 40-46 (ECF No. 20-7, #156).

[10] In his deposition, Mr. McMullin confirmed his voice at various points throughout the recording. McMullin Dep. 40-46 (ECF No. 20-7, #161-63).

To support his claim, Mr. McMullin also cites testimony from one of the passengers, Kylie Tibbetts, who asserts Mr. McMullin was knocked unconscious, but only after the third blow from Trooper Peirson. This testimony, which does not align with Mr. McMullin's timeline of the interaction and which is based on observations from a witness without a clear view of the struggle, is similarly contradicted by the objective evidence in the summary judgment record; to wit, the video, which confirms Mr. McMullin spoke to Trooper Peirson following the third blow.

In light of Mr. McMullin's continued resistance, the use of force in order to effectuate his arrest was reasonable. Courts must evaluate the use of force within the context of the situation and allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, courts have found punches or even greater levels of force reasonable under the Fourth Amendment's "objective reasonableness" standard. *See, e.g.*, *Statchen v. Palmer*, 623 F.3d 15, 17 (1st Cir. 2010) (finding that a police officer using "considerable" force in the form of "kneeing and hitting" an arrestee who, like Mr. McMullin, was intoxicated and refusing to submit to arrest, was reasonable under the circumstances); *Scott v. Harris*, 550 U.S. 372 (2007) (affirming that, in light of the risk of bodily harm the arrestee's actions posed to both the public and the officers, the use of "deadly force" in the form of ramming the arrestee's car off the road was reasonable).

Trooper Peirson was faced with an intoxicated man consistently resisting arrest— both verbally and physically—after repeated requests for compliance. In response, Trooper

15

Peirson administered force in the form of three to four blows to the head and immediately ceased the use of force once Mr. McMullin had been handcuffed. Under these circumstances, Trooper Peirson used force that was "consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 205 (1st Cir. 1990). [11]

## II. Qualified Immunity

The doctrine of qualified immunity protects law enforcement officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Furthermore, this expansive principle protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also MacDonald v. Town of Eastham*, 745 F.3d 8, 11 (1st Cir. 2014).

A qualified immunity analysis generally entails a two-prong approach. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In the First Circuit, the second prong of this analysis has been subdivided into two inquiries which are "functionally identical" to the test required by *Saucier*. *See Jennings v. Jones,* 499 F.3d

---

[11] Mr. McMullin also offers vague argument that the alleged severity of his injuries following the altercation is indicative of the excessiveness of the force used against him. However, Mr. McMullin failed to submit any evidence substantiating the extent of his injuries or the treatment he received, despite the Defendant drawing attention to this factual deficiency. Without a factual basis to substantiate his claims, I cannot consider the extent or severity of his alleged injuries in my analysis.

2, 10 (1st Cir. 2007). Thus, on the one hand, the court considers whether "the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation." *Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014). On the other, the court looks to "whether the contours of the right, in general, were sufficiently clear, and whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Id.* (citing *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)).[12] In this second inquiry, "[t]he burden of demonstrating the law was clearly established at the time of the alleged constitutional violation is on the plaintiff." *McGrath v. Tavares*, 757 F.3d 20, 29 (1st Cir. 2014). As stated by the Supreme Court, "[c]ourts have discretion to decide the order in which to engage the[ ] two [qualified immunity] prongs;" however, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Concluding, as I have, that the material facts, taken in the light most favorable to the Plaintiff, fall short of making out a constitutional violation because the force administered was objectively reasonable under the circumstances, it necessarily follows

---

[12] As discussed in *Adle v. Maine Police Department*,
> The intersection between summary judgment and qualified immunity can be tricky to navigate. The difficulty arises because the summary judgment standard requires absolute deference to the nonmovant's factual assertions (as long as those assertions are put forward on personal knowledge or otherwise documented by materials of evidentiary quality), whereas qualified immunity, when raised on summary judgment, demands deference to the reasonable, if mistaken actions of the movant. In order to ease this inherent tension, we think it wise for courts to cabin these standards and keep them logically distinct, first identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable officer should have known that his actions were unlawful.

279 F. Supp. 3d 337, 349–50 (D. Me. 2017) (internal citations omitted).

that Trooper Peirson is entitled to qualified immunity. However, while I recognize that the margin between "objectively" unreasonable force and "clearly established" unreasonable force is a very narrow one,[13] there is an actual margin. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (discussing the "hazy borders" that often exist in excessive force cases); *Mullenix v. Luna*, 136 S. Ct. 305, 312 (2015) (same, noting that qualified immunity takes hold in these areas). To defeat qualified immunity, Mr. McMullin must rely on "clearly established law" by, for example, "identify[ing] a case where an officer acting under similar circumstances [] was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "While it is not necessary for the [p]laintiff to find an identical case, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Adle v. Maine State Police Dep't*, No. 1:15-CV-458-NT, 2017 WL 3902859, *12 (D. Me. Sept. 6, 2017) (quoting *Mullenix*, 136 S. Ct. 305, 308 (2015)). Assuming, arguendo, that there are rational people among us who would take exception to the amount of force Trooper Peirson applied to Mr. McMullin, the record in this case simply does permit the finding of a non-debatable constitutional violation. Nor does the law in this circuit. *Statchen v. Palmer*, 623 F.3d 15 (1st Cir. 2010) (affirming summary judgment for officers who employed force to arrest an individual for public drunkenness, which force

---

[13] *See Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994) ("In theory, substantive liability and qualified immunity are two separate questions and, indeed, may be subject to somewhat different procedural treatment. In police misconduct cases, however, the Supreme Court has used the same 'objectively reasonable' standard in describing both the constitutional test of liability . . . and the Court's own standard for qualified immunity." (citation omitted)).

18

included "kneeing and hitting" and produced broken ribs from a fall to the ground due to the plaintiff's initial failure to submit).

## CONCLUSION

For the foregoing reasons, the court **GRANTS** the Defendant's Motion for Summary Judgment.

**SO ORDERED.**

Dated this 16th day of January, 2019

/s/ Lance E. Walker  
**U.S. DISTRICT JUDGE**